## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

TIMOTHY A. JOHNSON,

        Plaintiff,

v.                           CIVIL ACTION NO.  2:21-cv-00380

WEST VIRGINIA UNIVERSITY BOARD
OF GOVERNORS, et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Ghassan Ghorayeb, M.D. and Lingo Lai, M.D.'s Motion to Dismiss Amended Complaint, (ECF No. 2), Defendant West Virginia University Board of Governors' ("WVUBOG")[1] Motion to Dismiss First Amended Complaint, (ECF No. 14), Defendant West Virginia University Hospitals, Inc.'s ("WVU Hospitals") Motion to Dismiss First Amended Complaint, (ECF No. 17), and Defendant West Virginia University Medical Corporation's[2] ("WVU Medical Corporation") Motion to Dismiss Plaintiff's Amended Complaint, (ECF No. 19).

By standing order entered on January 4, 2016, and filed in this case on July 2, 2021, (ECF No. 4), and by Order dated November 10, 2021, (ECF No. 60), this action was referred to United

---

[1] WVUBOG is the governing body for West Virginia University, a West Virginia state run, public university doing business as "WVU Medicine."  (ECF No. 16 at 1, ¶ 2.)  WVUBOG also employs Dr. Ghorayeb and Dr. Lai through their Health Services Division.  (*Id.*)

[2] WVU Medical Corporation is a West Virginia corporation doing business as "University Health Associates—West Virginia Eye Institute."  (*Id.* at 2, ¶ 3.)

States Magistrate Judge Dwane L. Tinsley for total pretrial management and submission of proposed findings and a recommendation for disposition ("PF&R").  Magistrate Judge Tinsley entered his PF&R on February 28, 2022, recommending that this Court grant Dr. Ghorayeb and Dr. Lai's Motion to Dismiss and dismiss Plaintiff Timothy A. Johnson's Section 1983 claims against them.  (ECF No. 81 at 1–2.)  The Magistrate Judge further recommended the Court *sua sponte* decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and remand this action to state court.  (*Id.* at 1–2.)  Objections to the PF&R were due on March 17, 2022, and Plaintiff filed a timely objection.  (ECF No. 82.)

For the reasons explained in greater detail below, the Court **SUSTAINS** Plaintiff's objections to the PF&R, **REJECTS** the Magistrate Judge's PF&R, **DENIES** Defendants Dr. Ghorayeb, Dr. Lai, WVUBOG, and WVU Medical Corporation's motions to dismiss, (ECF Nos. 2, 14, 19) and **GRANTS** Defendant WVU Hospitals' Motion to Dismiss, (ECF No. 17).

## I.    BACKGROUND

This civil action arises from medical care Plaintiff received during his incarceration at the Federal Correctional Institution in Morgantown, West Virginia ("FCI-Morgantown"), which Plaintiff alleges led to blindness in his right eye.  (ECF No. 1-1.)  Plaintiff, acting in a *pro se* capacity, initiated this action in the Circuit Court of Kanawha County, West Virginia on August 5, 2020, naming Dr. Ghorayeb, Dr. Lai, and "The West Virginia Eye Institute" as defendants. (ECF No. 1-1 at 3.)  On November 12, 2020, attorney Ronald N. Walters, Jr. entered an appearance on behalf of Plaintiff, (ECF No. 1-2 at 15), and on March 1, 2021, Walters filed the operative First Amended Complaint.  (ECF No. 1-3 at 1.)  The First Amended Complaint names five Defendants: (1) WVUBOG, (2) WVU Medical Corporation, (3) WVU Hospitals, (4) Dr. Ghorayeb, in his

individual capacity, and (5) Dr. Lai, in her individual capacity. (ECF No. 16.) The following factual allegations are taken from the First Amended Complaint.

### A. Factual Background

Plaintiff alleges that he was diagnosed with sarcoidosis[3] in 2003. (*Id.* at 3, ¶ 12.) Those suffering from sarcoidosis may develop chronic sarcoidosis, which is marked by re-occurring flare-ups. (*Id.* at 3, ¶ 13.) The first line of treatment for active sarcoidosis is the prescription and administration of prednisone, a type of steroid. (*Id.*) At the time of his diagnosis, Plaintiff was totally blind in his left eye from a prior stroke and his right eye had useful sight that had been diminished from a prior sarcoidosis flare-up. (*Id.* at 4, ¶ 19.) However, Plaintiff maintains that his sarcoidosis was "effectively maintained and controlled" until he underwent treatment by Defendants. (*Id.* at 4, ¶ 16, 20.)

Plaintiff began his incarceration at FCI-Morgantown on May 3, 2016. (*Id.* at 4, ¶ 17.) Upon his arrival, the Federal Bureau of Prisons optometrist noted that Plaintiff had sarcoidosis affecting his eye and referred all of Plaintiff's eye treatment and care to the ophthalmology specialists at the West Virginia Eye Institute (the "Eye Institute"). (*Id.* at 4, ¶ 21.) Plaintiff's first visit with the Eye Institute occurred on June 14, 2016, and his history of sarcoidosis was noted at that time by Eye Institute physicians. (*Id.* at 4, ¶ 22.) Plaintiff was treated by the following Eye Institute physicians during his course of treatment: Dr. Kenneth Mitchell, M.D.; Dr. Brian

---

[3] Sarcoidosis is an inflammatory disease that may affect multiple organs in the body, including the eye. (ECF No. 16 at 3, ¶ 12.) Sarcoidosis can result in the development of abnormal masses or nodules—called granulomas—that consist of inflamed tissues formed in certain organs of the body. (*Id.*) When sarcoidosis affects the eyes, as was the case with Plaintiff, it is referred to as ocular sarcoidosis. (*Id.* at 3, ¶ 14.) Common symptoms of ocular sarcoidosis include blurred vision or vision loss, light sensitivity, floaters (black spots or lines appearing in an individual's vision), dry or itchy eyes, red eyes, burning sensation in the eyes, or pain in the eyes. (*Id.* at 3, ¶ 15.)

McMillan, M.D.; Dr. Lingo Lai, M.D.; Dr. Richard Ghorayeb, M.D.; Dr. David Hinkle, M.D.; and Dr. Lee Wiley, M.D.  (*Id.* at 4, ¶ 23.)

Dr. McMillan referred Plaintiff to Dr. Lai for treatment of his sarcoidosis on July 24, 2017. (*Id.* at 5, 7, ¶¶ 25, 42.)  Although Plaintiff was specifically referred to Dr. Lai for sarcoidosis, Dr. Lai allegedly failed to monitor Plaintiff's sarcoidosis by ACE testing, despite observing inflammation in Plaintiff's right eye "in a setting of known sarcoidosis."  (*Id.* at 7, ¶ 43.)  Plaintiff further alleges that despite these observations, Dr. Lai failed to employ the use of steroids to control the inflammation in his right eye for approximately five months from July 24, 2017 to December 13, 2017.  (*Id.* at 8, ¶ 44.)

During his treatment at the Eye Institute, Plaintiff advised Dr. Lai and Dr. Ghorayeb that he was experiencing light sensitivity, pain, and a decrease in his vision to the point it was becoming difficult for him to get around.  (*Id.* at 5, ¶ 27.)  Dr. Lai referred Plaintiff to Dr. Ghorayeb on December 13, 2017.  (*Id.* at 8, ¶ 51.)  On January 11, 2018, Plaintiff advised Dr. Ghorayeb of a worsening condition of his right eye, and Dr. Ghorayeb noted in Plaintiff's medical record that Plaintiff was suffering from uncontrolled inflammation in his right eye.  (*Id.* at 5, ¶ 28.)  Dr. Ghorayeb also noted at this visit a "critical need" for a primary care physician's involvement to systemically monitor Plaintiff's blood serum levels for indications of active sarcoidosis inflammation.  (*Id.* at 9, ¶ 53.)  Dr. Ghorayeb referred this testing and monitoring to pulmonology at WVU Hospitals.  (*Id.* a 9, ¶ 54.)  This referral noted that Plaintiff's sarcoidosis was "well-controlled," despite Dr. Ghorayeb's observations that same day of active ocular inflammation indicated by the presence of trace cells with 2+ flare.  (*Id.* at 9, ¶ 55.)

Plaintiff's next visit with Dr. Ghorayeb occurred on May 15, 2018, and Dr. Ghorayeb noted no improvement and ordered a follow-up appointment in three months. (*Id.*) Plaintiff's follow-up with Dr. Ghorayeb occurred on July 3, 2018—over five months after Dr. Ghorayeb's initial observation of uncontrolled inflammation in Plaintiff's right eye—and Dr. Ghorayeb noted at that time that Plaintiff was experiencing "constant problems" with his right eye and began treating him with prednisone. (*Id.*) Over the course of Dr. Ghorayeb's treatment of Plaintiff, Dr. Ghorayeb observed uncontrolled inflammation by slit-lamp examination of Plaintiff's right eye, noting "[t]race cell with 2+ flare," which is indicative of active inflammation inside the eye. (*Id.* at 6, ¶ 32.)

Plaintiff's vision in his right eye continued to worsen, and a few weeks later on July 25, 2018, Plaintiff was transported to WVU Hospitals' Emergency Department in great pain and distress with profuse mucous discharging from both eyes. (*Id.* at 5, ¶ 29.) During his visit to WVU Hospitals' Emergency Department, Plaintiff was treated by Dr. Nichols, whose clinical impression was that Plaintiff's symptoms were caused by sarcoid uveitis. (*Id.* at 6, ¶ 30.) Dr. Nicholls ordered Plaintiff to resume the prednisone treatment. (*Id.*)

A couple of weeks later, on August 6, 2018, Dr. Ghorayeb performed diagnostic and therapeutic pars plana vitrectomy ("PPV") surgery for the removal of "a stalk preretinal fibrosis that was emanating from the nerve." (*Id.* at 6, ¶ 33.) Following the PPV surgery, Plaintiff suffered a "corneal decomposition" with "pain noted 8/10," and required a second surgery on October 1, 2018 by corneal specialist Dr. Lee Wiley, M.D. (*Id.* at 6, ¶ 34.) Plaintiff contends that despite Dr. Ghorayeb's knowledge of his history of sarcoidosis and treatment with steroids, and his reports of worsening vision and pain, Dr. Ghorayeb did not begin the systematic treatment of Plaintiff's

chronic ocular sarcoidosis by prescribing a course of oral prednisone until five months after the rendering of medical care. (*Id.* at 6, ¶ 35.) Ultimately, Plaintiff was rendered irreversibly legally blind in his right eye. (*Id.* at 8, ¶ 45.)

### B. *Procedural Background*

As noted above, Plaintiff initiated this action, *pro se*, in the Circuit Court of Kanawha County on August 5, 2020. (ECF No. 1 at 2, ¶ 1.) Plaintiff's original Complaint named Dr. Ghorayeb, Dr. Lai, and "The West Virginia Eye Institute" as defendants. (*Id.*) Pursuant to the pre-suit notice requirements of the West Virginia Medical Professional Liability Act ("MPLA"), Plaintiff served a "Notice of Claim" upon Dr. Ghorayeb on May 28, 2020, (ECF No. 1-1 at 14–19), upon Dr. Lai on May 26, 2020, (*Id.* at 20–24), and upon WVUBOG on June 11, 2020, (*Id.* at 25–27). Plaintiff provided a "Medical Screening Certificate" from Dr. Camile Elise (Jones) Johnson, M.D. ("Dr. Jones") to Dr. Ghorayeb on June 27, 2020. (*Id.* at 28–32.) Plaintiff provided a "West Virginia Code § 55-7B-6(c) Statement," which stated his belief that his claims against Dr. Lai were "based upon a well-established legal theory of liability which [did] not require expert testimony to ascertain the applicable standard of care," on May 28, 2020. (*Id.* at 52–58.)

Drs. Ghorayeb and Lai filed a joint motion to dismiss Plaintiff's *pro se* Complaint on November 11, 2020. (ECF No. 16 at 2, ¶ 4.) The West Virginia Eye Institute filed a motion to dismiss Plaintiff's *pro se* Complaint on November 12, 2020. (*Id.* at 2, ¶ 6.) That same day, attorney Ronald N. Walters, Jr. filed a Notice of Appearance of Counsel on behalf of Plaintiff. (*Id.* at 2, ¶ 5.) On March 1, 2021, before the Circuit Court ruled upon the pending motions to dismiss, Plaintiff, by counsel, filed an Amended Complaint against WVUBOG, WVU Medical Corporation, WVU Hospitals, Dr. Ghorayeb, and Dr. Lai. (*Id.* at 3, ¶ 8.)

In addition to the state law medical claims brought by Plaintiff, the Amended Complaint also alleged causes of action under 42 U.S.C. § 1983 against Dr. Ghorayeb and Dr. Lai.  (*Id.*)  Due to the inclusion of Plaintiff's Section 1983 claims, Defendants—invoking federal question jurisdiction—removed this action to this Court on July 1, 2021.  (ECF No. 1 at 4, ¶ 15.)  Defendants maintain that Plaintiff's failure to serve a proper "certificate of merit," as mandated by W. Va. Code § 55-7B-6, deprives this Court of jurisdiction over Plaintiff's state-law claims of medical negligence under the MPLA.  (*Id.* at 4, ¶¶ 16–19.)  Defendants argue in the alternative, however, that if this Court determines that Plaintiff has met the pre-suit notice requirements of the MPLA, then it has supplemental jurisdiction over Plaintiff's state-law medical negligence claims pursuant to 28 U.S.C. §1367(a) because they relate to Plaintiff's Section 1983 claims are part of the same claim and controversy in which this Court has original jurisdiction.  (*Id.* at 5, ¶ 20.)

After this case was removed, Defendants were ordered to file any motions they wanted to be considered on this Court's docket.  (ECF No. 11.)  Defendants have filed four motions to dismiss, (ECF Nos. 2, 14, 17, 19), which remain pending.  Each of these motions have been fully briefed and are ripe for adjudication.

## II.    LEGAL STANDARD

### A.  Review of Magistrate Judge's Findings and Recommendations

The Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

In addition, this Court need not conduct a *de novo* review when a plaintiff "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In reviewing those portions of the PF&R to which Plaintiff has objected, this Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

    *B.  Rule 12(b)(6) Motion to Dismiss*

    A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a

8

right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## C.  Conversion of Motion to Dismiss to Motion for Summary Judgment

Plaintiff argues that Dr. Ghorayeb and Dr. Lai's Motion to Dismiss must be treated as a motion for summary judgment insofar as contains matters outside the pleadings.  (ECF No. 10 at 13–15.)  Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d) (emphasis added).  Conversion of a Rule 12(b)(6) motion to a motion for summary judgment lies within this Court's discretion.  *Camastro v. City of Wheeling*, 49 F. Supp. 2d 500, 502 (S.D. W. Va. 1998) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  Although this Court may convert Drs. Ghorayeb and Lai's Motion to Dismiss to one for summary judgment, it certainly is not required to, and may consider the motion under Rule 12(b)(6) so long as it excludes the matters presented outside of the pleadings.  Moreover, this Court can consider documents outside of the pleadings, without converting the motion to one for summary judgment, so long as the documents are "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge [their] authenticity."  *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

This Court has previously explained the test to determine whether matters presented outside of the pleadings are "integral" to a complaint:

> [T]he referenced document [must] be central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted.  The cases illustrate this requirement.  Thus, where a complaint in a fraud action references a document containing the alleged material misrepresentations, the referenced document may be considered part of the complaint.  Similarly, a newspaper article reporting allegedly fraudulent statements

by a corporate officer may be considered part of the complaint in a securities fraud action, and an allegedly libelous magazine article referred to in a complaint may be considered part of the complaint in a libel action based on that article.

*Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014).

The extrinsic matters Plaintiff refers to are two exhibits attached to Drs. Ghorayeb and Lai's Motion to Dismiss. Exhibit A consists of medical records from Plaintiff's initial visit to the Eye Institute on June 14, 2016, which notes that Plaintiff has a personal history of sarcoidosis and describes Plaintiff's vision as "very poor." (ECF No. 3-1 at 3.) This visit is explicitly referenced in the Amended Complaint, and the treating physician's notation of Plaintiff's history of sarcoidosis is also referenced. (ECF No. 16 at 4, ¶ 22.) However, it cannot be said that the mere existence of these medical records give rise to the legal rights asserted by Plaintiff. Rather, the legal rights asserted by Plaintiff arise from the alleged failure of Dr. Ghorayeb and Dr. Lai to administer appropriate medical care to treat Plaintiff's chronic sarcoidosis. These medical records may contain information regarding Plaintiff's asserted legal rights—for example, regarding the condition of Plaintiff's sarcoidosis at the time of treatment. However, they are not "integral" to the Amended Complaint because the mere existence of the medical records themselves do not give rise to the legal rights asserted by Plaintiff. Therefore, the Court may not consider them in its analysis of Drs. Ghorayeb and Lai's Motion to Dismiss without converting it to one for summary judgment.

Exhibit B consists of medical records from Plaintiff's last known ophthalmology visit, which indicate that Plaintiff was capable of counting fingers at a distance of two feet. (ECF No. 3-2 at 1.) Plaintiff notes that Exhibit B involves matters within the last year and well beyond the matters discussed in the Amended Complaint. (ECF No. 10 at 14.) To be sure, these medical

records have not been referenced in the Amended Complaint, nor has this ophthalmology visit been referenced in the Amended Complaint.  Therefore, it cannot be said that the medical records in Exhibit B are "integral" to the Amended Complaint, and the Court may not consider them without converting Drs. Ghorayeb and Lai's Motion to Dismiss to one for summary judgment.

Accordingly, because Exhibits A and B are not "integral" to the Amended Complaint, the Court declines to consider them in its disposition of Drs. Ghorayeb and Lai's Motion to Dismiss. The Court will proceed to examine this motion as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.    DISCUSSION

#### 1.  Plaintiff's Objections to the Magistrate Judge's PF&R

Magistrate Judge Tinsley filed his PF&R on February 28, 2022, recommending that this Court grant Drs. Ghorayeb and Lai's Motion to Dismiss Plaintiff's Amended Complaint with regard to Plaintiff's Section 1983 claims, *sua sponte* decline to exercise supplemental jurisdiction over Plaintiff's state-law claims, and remand this civil action to state court.  (ECF No. 81 at 2.) Plaintiff filed timely objections to the PF&R on March 17, 2022.  (ECF No. 82.)

Plaintiff appears to raise five objections to the Magistrate Judge's PF&R.  First, Plaintiff argues that he has plead sufficient facts to establish both that the suffered an objectively serious medical condition and that Drs. Ghorayeb and Lai had subjective knowledge of the condition and the excessive risk posed by inaction.  (*Id.* at 2.)  Second, Plaintiff objects to the Magistrate Judge's apparent failure to consider the expert opinion provided in Dr. Jones' Medical Screening Certificate, as well as the information cited in his West Virginia Code § 55-7B-6(c) Statement. (*Id.* at 4–6.)  Third, Plaintiff objects to the portion of the Magistrate Judge's PF&R finding that the

decision of Drs. Ghorayeb and Lai to treat Plaintiff's condition with Durezol—a topical corticosteroid used for ocular inflammation—rather than oral prednisone did not reach the level of an Eighth Amendment violation. (*Id.* at 7–8.) Fourth, Plaintiff objects to the Magistrate Judge's recommendation that this Court remand his remaining state law claims to the Circuit Court of Kanawha County. (*Id.* at 8.) Finally, Plaintiff objects to the Magistrate Judge's failure to rule on his Motion for Protective Order, (ECF No. 74).[4]

The Court must review Plaintiff's specific objections to the PF&R under a *de novo* standard. 28 U.S.C. § 636(b)(1)(C). Plaintiff's objections—with the exception of his final two objections—each relate to the Magistrate Judge's finding that he has failed to plead sufficient factual allegations giving rise to an Eighth Amendment claim for deliberate indifference. (*Id.* at 2.) The Magistrate Judge found that the decision of Drs. Ghorayeb and Lai "to keep Plaintiff on a topical corticosteroid to address his eye inflammation rather than Plaintiff's preferred course of oral prednisone [did] not reach the level of an Eighth Amendment violation." (ECF No. 81 at 16.) Moreover, the Magistrate Judge found that Dr. Lai's alleged failure to order an ACE test did not rise to the level of an Eighth Amendment violation. (*Id.* at 16–17.)

Plaintiff's claims for deliberate indifference against Drs. Ghorayeb and Lai are brought under 42 U.S.C.§ 1983, which states in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law.

---

[4] In accordance with the Standing Order In Re: Assignment and Referral of Civil Actions and Matters to Magistrate Judges entered on January 4, 2016, and entered in this case on July 2, 2021, (ECF No. 4), Plaintiff's Motion for Protective Order, (ECF No. 74), has been referred to Magistrate Judge Tinsley and remains pending on the Court's docket.

Claims under Section 1983, therefore, must meet two essential elements: (1) they must allege the violation of a right secured by the Constitution and laws of the United States; and (2) they must show that the alleged deprivation was committed by a person acting under color of state law.[5] *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

"[A] prison official's 'deliberate indifference' to a substantial harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  This prohibition "proscribes more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  It also encompasses "the treatment a prisoner receives in prison. . . ." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  Particularly, the Eighth Amendment imposes a duty on prison officials to "ensure that inmates receive . . . medical care." *Farmer*, 511 U.S. at 82.  In this respect, an official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104.

Eighth Amendment claims of deliberate indifference to serious medical conditions have two prongs, one objective and one subjective. *Farmer*, 511 U.S. at 834.  The first prong requires

---

[5] Plaintiff alleges in his Amended Complaint that Drs. Ghorayeb and Lai were "state actors" when they treated him while he was a federal inmate incarcerated at FCI-Morgantown.  (ECF No. 16 at 7–8, ¶¶ 41, 50.)  Moreover, the Amended Complaint alleges that Drs. Ghorayeb and Lai were employed by WVUBOG, the governing body for West Virginia University.  (*Id.* at 1, ¶ 2.)

In its Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint, WVUBOG noted that "West Virginia University contracts with the federal government to provide health care services, including ophthalmology services, to federal inmates."  (ECF No. 15 at 2 n.3.)  However, WVUBOG, Dr. Ghorayeb, and Dr. Lai have not otherwise disputed their alleged status as "state actors" for purposes of Plaintiff's Section 1983 claims, and they have not raised this as grounds for dismissal of those claims.

a plaintiff to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In this context, "[an] inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). The Magistrate Judge noted that Defendants "do not challenge the [Amended Complaint's] allegations as to the first objective element," and he "assume[d] for purposes of this analysis that Plaintiff's medical needs were sufficiently serious." (ECF No. 81 at 15) (citing *Green v. Rubenstein*, 644 F. Supp. 2d 723, 732 (S.D. W. Va. 2009)). Rather, the Magistrate Judge's recommendation of dismissal was grounded in the second, subjective prong of *Farmer*'s test.

*Farmer*'s second prong requires plaintiffs to demonstrate that the prison officials acted with a "sufficiently culpable state of mind." 511 U.S. at 834 (internal quotation marks omitted) (quoting *Wilson*, 501 U.S. at 297). Eighth Amendment claims in this context require a showing of "deliberate indifference," which require plaintiffs to show that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citing *Farmer*, 511 U.S. at 835).

In cases involving deliberate indifference to an inmate's serious medical needs, *Farmer*'s subjective prong requires a showing of the official's "actual subjective knowledge of both the

14

inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 837–39).  Plaintiffs can meet the subjective knowledge requirement through direct evidence of an actor's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at 842).

"[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105–06.  Prisoner complaints regarding negligent diagnoses or treatment do not state valid claims of medical mistreatment under the Eighth Amendment, nor do claims of medical malpractice. *Id.* at 106.  Moreover, disagreements between a healthcare provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim as questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).  However, the fact that an inmate has been provided with *some* treatment alone does not necessitate a finding that the inmate has been provided with *constitutionally adequate* treatment.  *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (citing *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[A] total deprivation of care is not a necessary condition for finding a constitutional violation: Grossly incompetent or inadequate care can [also] constitute deliberate indifference. . . .")).

Examining the well-pleaded factual allegations in Plaintiff's Amended Complaint—which are entitled to the assumption of truth at this stage of the proceedings—Plaintiff has stated plausible Eighth Amendment claims of deliberate indifference against Drs. Ghorayeb and Lai.  Plaintiff alleges that Drs. Ghorayeb and Lai were subjectively aware that he suffered from sarcoidosis. (ECF No. 16 at 4–5, ¶¶ 21–25.)  Plaintiff alleges that Drs. Ghorayeb and Lai were subjectively aware that he was experiencing uncontrolled, active inflammation in his right eye during their treatment of him.  (*Id.* at 5–6, ¶ 28, 32.)  Plaintiff alleges that "[t]he first line of treatment for active sarcoidosis is the prescription and administration of the steroid prednisone."  (*Id.* at 3, ¶ 13.)  Yet, despite their knowledge of Plaintiff's extended, nearly two-decade history of sarcoidosis and prior treatment with steroids, as well as Plaintiff's repeated reports of worsening vision and pain, Plaintiff alleges that his chronic ocular sarcoidosis was not systematically treated with prednisone until five months after he began receiving medical care from Drs. Ghorayeb and Lai.  (*Id.* at 6, ¶ 35.)

Moreover, attached to Plaintiff's Amended Complaint is an expert opinion of Dr. Jones— a licensed medical doctor in the State of Michigan—opining that Dr. Ghorayeb "failed to treat [Plaintiff] according to the well-established standard of care for chronic sarcoidosis with ocular involvement by failing to prescribe prednisone or any other inflammation controlling drug from the time that [Plaintiff] became a patient on January 11, 2018 until August 6, 2018."  (ECF No. 1-1 at 29.)  Moreover, Dr. Jones opined that "any medical doctor that observes active inflammation in a chronic sarcoidosis setting has the duty to treat the underlying sarcoidosis in a systemic, whole body, treatment," and that "[t]he first line treatment for active sarcoidosis is the prescription and administration of prednisone."  (*Id.*)

16

The Magistrate Judge found that the decision of Drs. Ghorayeb and Lai to treat Plaintiff with Durezol—a topical corticosteroid that Plaintiff alleges has not been tested specifically in patients with ocular sarcoidosis—rather than Plaintiff's preferred course of treatment—oral prednisone—did not reach the level of an Eighth Amendment violation. (ECF No. 81 at 16.) Because "the decision to provide plaintiff with one medication over another does not give rise to a constitutional violation," the Magistrate Judge concluded that the subjective prong of *Farmer*'s deliberate indifference test had not been met by the factual allegations of Plaintiff's Amended Complaint. (*Id.* at 16–17.)

However, the factual allegations contained in Plaintiff's Amended Complaint do not demonstrate a "[m]ere disagreement with a physician's course of treatment," which otherwise would fall far short of "grossly inadequate" medical care under *Estelle*. Rather, they demonstrate repeated referrals, and re-referrals, to several physicians at the Eye Institute, as well as a continual delay in the prescription and administration of prednisone, which Plaintiff alleges—and his expert physician agrees—is the first line of treatment for those suffering active inflammation caused by ocular sarcoidosis. Moreover, this delay allegedly occurred despite Dr. Ghorayeb and Dr. Lai's actual, subjective awareness of Plaintiff's long history of sarcoidosis and, in particular, ocular sarcoidosis. While mere negligence, medical malpractice, or disagreement concerning the appropriate course of treatment are not actionable under the Eighth Amendment, the opinions submitted by Plaintiff's expert—coupled with Plaintiff's allegations that Drs. Ghorayeb and Lai were subjectively aware of his active, uncontrolled ocular inflammation and history of sarcoidosis—are sufficient to state a plausible Eighth Amendment claim of deliberate indifference.

Because the Court finds that Plaintiff's factual allegations—which are entitled to the assumption of truth at this stage of the proceedings—state plausible Eighth Amendment claims of deliberate indifference against Drs. Ghorayeb and Lai, this Court retains supplemental jurisdiction over Plaintiff's remaining state-law claims pursuant to 28 U.S.C. § 1367(a) because they relate to and are part of the same claim and controversy as Plaintiff's Section 1983 claims.  A remand of Plaintiff's state-law claims would be inappropriate at this stage of the proceedings, given the survival of Plaintiff's Section 1983 claims.  Accordingly, the Court **SUSTAINS** Plaintiff's objections regarding the Magistrate Judge's recommendation that the Court dismiss his Section 1983 Claims against Drs. Ghorayeb and Lai, **REJECTS** the Magistrate Judge's **PF&R**, (ECF No. 81), and **DENIES** Drs. Ghorayeb and Lai's Motion to Dismiss, (ECF No. 2), to the extent it moves for dismissal of Counts I and II of Plaintiff's Amended Complaint.

### B.  Defendants' Motions to Dismiss

Because the Court rejects the Magistrate Judge's PF&R, it must now consider the remaining arguments raised by Defendants in their motions to dismiss.  Defendants have filed four motions to dismiss Plaintiff's Amended Complaint.  (ECF Nos. 2, 14, 17, 19.)  The Defendants' motions to dismiss largely raise similar grounds for dismissal.  First, Drs. Ghorayeb and Lai's, WVU Hospitals', and WVUBOG's motions to dismiss argue that Plaintiff's claims are time barred by the applicable two-year statute of limitations set forth in W. Va. Code §55-7B-4.[6]  (ECF No. 3

---

[6] WVU Medical Corporation has joined in WVUBOG's Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss.  WVU Medical Corporation's joinder was

> intended to include the thorough and complete analysis of Plaintiff's failure to meet the requirements for providing Notice of Claim and adequate Certificates of Merit with regard to either Dr. Lai and Dr. Ghorayeb, as well as the statute of limitations issues presented . . . with regard to claims against Dr. Lai.

(ECF No. 20 at 7 n.4.)

at 9–13; ECF No. 15 at 13–15; ECF No. 18 at 7.)  Second, each motion to dismiss contends that Plaintiff's failure to comply with the MPLA's pre-suit notice requirements warrant dismissal of his claims against them.  (ECF No. 3 at 11; ECF No. 1-2 at 25–31; ECF No. 15 at 6–13; ECF No. 18 at 5; ECF No. 20 at 5.)   Additionally, WVU Hospitals separately argues that it is an inappropriate defendant insofar as it does not employ Drs. Ghorayeb and Lai, or any other WVUBOG physician, and Plaintiff cannot plead agency liability against WVU Hospitals for these physicians' alleged conduct.  (ECF No. 18 at 3.)  Each argument, as they relate to each individual Defendant is addressed in turn.

*1.  Statute of Limitations*

Defendants Ghorayeb, Lai, WVUBOG, and WVU Hospitals move to dismiss Plaintiff's Amended Complaint insofar as his claims against them are time barred under the applicable two-year statute of limitations set forth in W. Va. Code § 55-7B-4.  (ECF No. 3 at 9–13; ECF No. 15 at 13–15; ECF No. 18 at 7.)

The MPLA prescribes a two-year statute of limitations period for claims of medical malpractice:

> A cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury, except as provided in subsection (c) of this section, and must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs[.]

W. Va. Code § 55-7B-4(a).  Hence, the MPLA "requires an injured plaintiff to file a malpractice claim against a health care provider within two years of the date of the injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have

19

discovered such injury, whichever last occurs."  Syl. Pt. 1, *Gaither v. City Hospital, Inc.*, 487

S.E.2d 901 (W. Va. 1997) (internal quotation marks omitted).

The West Virginia Supreme Court of Appeals ("WVSCA") has outlined the analysis to

determine whether a cause of action is time barred as follows:

> First, the court should identify the applicable statute of limitations for each cause
> of action.  Second, the court (or, if questions of material fact exist, the jury) should
> identify when the requisite elements of the cause of action occurred.  Third, the
> discovery rule should be applied to determine when the statute of limitations began
> to run by determining when the plaintiff knew, or by the exercise of reasonable
> diligence should have known, of the elements of a possible cause of action. . . .

Syl. Pt. 1, *Richards v. Walker*, 813 S.E.2d 923 (W. Va. 2018).  Moreover, the WVSCA has

instructed that

> unless there is a clear statutory prohibition to its application, under the discovery
> rule the statute of limitations begins to run when the plaintiff knows, or by the
> exercise of reasonable diligence, should know (1) that the plaintiff has been injured,
> (2) the identity of the entity who owed the plaintiff a duty to act with due care, and
> who may have engaged in conduct that breached that duty, and (3) that the conduct
> of that entity has a causal relation to the injury.

Syl. Pt. 4, *Gaither*, 487 S.E.2d 901.

With regard to Plaintiff's claims against Drs. Ghorayeb, Lai, and WVUBOG, Plaintiff

argues that the earliest the applicable statute of limitations would begin to run "would be the end

of the recovery period of [his] PPV surgery, or . . . the end of his prison stay, when he could

properly investigate who undertook what actions or inactions in the treatment of his eyes and what

effects those actions or inactions had."  (ECF No. 10 at 25.)  Plaintiff contends that he "did not

become aware of the extent of his injuries and their irreversibility until well after the PPV surgery

he went through on August 6, 2018," and his discovery of the extent of his injuries occurred only

20

after he recovered from the surgery and realized his sight would not return what it had been in the months prior. (*Id.* at 24.)

The Court finds that Plaintiff was unable to adequately determine the full extent of his injuries, as well as the identity of all physicians playing a causal role in his injuries, including both Drs. Ghorayeb and Lai, until after his recovery from the PPV surgery. Although Plaintiff's eyesight continually worsened throughout his treatment by Drs. Ghorayeb and Lai, Plaintiff could not have been fully aware of the irreversibility of the blindness in his right eye until he recovered from the PPV surgery. Thus, under *Gaither*, the earliest possible date the statute of limitations could begin running would be August 6, 2018—the date of Plaintiff's PPV surgery—but more likely began running several weeks thereafter. The exact date, though, is immaterial because Plaintiff filed his *pro se* Complaint in the Circuit Court of Kanawha County on August 5, 2020, one day before the earliest potential expiration of the statute of limitations. (ECF No. 1 at 2, ¶ 1.) Accordingly, because the Court finds that the statute of limitations did not begin to run until, at the earliest, August 6, 2018 under the discovery rule, and because Plaintiff filed his *pro se* Complaint against Drs. Ghorayeb, Lai before the expiration of the applicable statute of limitations, the Court **DENIES** Dr. Ghorayeb, Dr. Lai's, and WVUBOG's motions to dismiss to the extent they argue Plaintiff's claims against them are time barred pursuant to W. Va. Code § 55-7B-4.

With regard to WVU Hospitals, which was not a defendant in this action until Plaintiff filed his Amended Complaint on March 1, 2021, the Court finds that Plaintiff's claims against it are barred by the applicable statute of limitations set forth in W. Va. Code § 55-7B-4. Plaintiff argues that the discovery rule delayed the running of the statute of limitations until his release from FCI-Morgantown on July 26, 2019, when he was finally able to obtain his full medical records and

21

have them reviewed.  (ECF No. 24 at 11.)  However, it is apparent that these medical records facilitated no discovery of information regarding WVU Hospitals or its employees' treatment of Plaintiff.  To be sure, Plaintiff obtained these records well before he filed his initial *pro se* Complaint.[7]  Despite having obtained and reviewed these medical records, Plaintiff still did not include WVU Hospitals as a defendant in August 2020.  With reasonable diligence, Plaintiff could have, and did, discover the identities of the other parties involved in his treatment in the weeks following his PPV surgery.  Moreover, Plaintiff suggests that he was aware that he suffered injury in the weeks following his PPV surgery, was aware of where his surgery took place, and was aware which physicians treated him both before and after the PPV surgery.

At the latest, Plaintiff should have become aware of the medical treatment causing his injuries, with reasonable diligence, several weeks after his PPV surgery on August 6, 2018.  Accordingly, Plaintiff's claims against WVU Hospitals, which were not brought until Plaintiff filed his Amended Complaint on March 1, 2021, are time barred by the two-year statute of limitations set forth in W. Va. Code § 55-7B-4.  Therefore, the Court **GRANTS** WVU Hospitals' Motion to Dismiss, (ECF No. 17), and **DISMISSES** Plaintiffs claims against it.[8]

### 2.  *MPLA Pre-Suit Notice Under W. Va. Code § 55-7B-6*

Each Defendant argues in their respective motions to dismiss that Plaintiff's Amended Complaint must be dismissed because he failed to comply with the MPLA's pre-suit notice requirements set forth in W. Va. Code § 55-7B-6.  However, the applicability of such notice

---

[7] Plaintiff obtained all of his medical records in June of 2019.  (ECF No. 24 at 11.)  Plaintiff's *pro se* Complaint was filed in August 2020.  (ECF No. 1 at 2, ¶ 1.)

[8] Because the Court grants WVU Hospitals' Motion to Dismiss, (ECF No. 17), on statute of limitations grounds, the Court need not analyze its arguments that it does not employ Dr. Ghorayeb and Dr. Lai, or any other Eye Institute or WVUBOG physician.

22

requirements in federal court have been drawn into question by the Fourth Circuit's recent decision in *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021).

*Pledger* involved an inmate's claims that prison officials ignored his repeated medical complaints and denied him meaningful treatment of his Crohn's disease, which ultimately led to his collapse and major surgery. 5 F.4th at 514–15. After exhausting his administrative remedies, Pledger filed suit in the United States District Court for the Northern District of West Virginia against the United States, several individual officers involved in his medical care, and St. Joseph's Hospital. *Id.* at 515. Pledger alleged claims of medical malpractice and deliberate indifference in violation of the Eighth Amendment against the United States under the Federal Tort Claims Act ("FTCA"), and asserted *Bivens* claims against the individual officers involved in his medical care. *Id.*

The United States moved to dismiss Pledger's FTCA medical negligence claim, arguing that because the FTCA incorporated West Virginia's tort liability standards, Pledger was required to comply with the MPLA's pre-suit notice requirements, and his failure to do so warranted dismissal of his FTCA claims. *Id.* at 516. The district court agreed, and dismissed Pledger's FTCA claim due to his failure to comply with the MPLA's pre-suit notice and certification requirement for medical negligence cases. *Id.* at 517–18.

On appeal, the Fourth Circuit held that "failure to comply with West Virginia's MPLA [was] not grounds for dismissal of Pledger's federal-court FTCA action." *Id.* at 518. The Fourth Circuit began with the "fundamental and uncontroversial point that the Federal Rules of Civil Procedure generally govern all civil actions in federal court."[9] *Id.* (citing Fed. R. Civ. P. 1). But,

---

[9] Likewise, the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c).

because another rule—West Virginia's MPLA—potentially applied to Pledger's medical liability claim, the Fourth Circuit employed the "well-established, two-step framework for mediating any potential conflict" set forth in *Hanna v. Plumer*, 380 U.S. 460 (1965) and *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).  *Id.*

Under this framework, the Fourth Circuit first asked "whether the Federal Rules 'answer[ed] the question in dispute,' here, whether a medical malpractice plaintiff must provide pre-suit expert support for his claim."  *Id.* at 518–19 (internal citations omitted).  The Fourth Circuit then observed that if it found that the Federal Rules answered the question in dispute, then they governed, notwithstanding the MPLA—unless, at step two of the analysis, it found the relevant Federal Rules invalid under the Constitution or the Rules Enabling Act.[10]  *Id.* at 519.  After noting that "several federal courts [had] applied [the] *Shady Grove* framework and held that the Federal Rules displace[d] state certificate requirements like [the MPLA]," the Fourth Circuit concluded, following their guidance, that the Federal Rules governing the sufficiency of pleadings—Rules 8, 9, 11, and 12—answered the "question in dispute" and supplanted the MPLA's certificate requirement in Pledger's federal-court FTCA action.  *Id.* at 519.

Because the Fourth Circuit found it "impossible to reconcile" certificate requirements like the MPLA's with the requirements of the Federal Rules of Civil Procedure, the Fourth Circuit held that "West Virginia's MPLA [could not] apply to Pledger's federal-court action under step one of the *Shady Grove* framework."  *Id.* at 520.  After briefly dispensing with Shady Grove's second step of the analysis, the Fourth Circuit concluded that "the Federal Rules, not the MPLA,

---

[10] The Fourth Circuit dispensed briefly with *Shady Grove*'s second step, noting that "[t]he Federal Rules of Civil Procedure enjoy 'presumptive validity under both the constitutional and statutory constraints,' and the Supreme Court has '[s]o far . . . rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act[.]'" *Pledger*, 5 F.4th at 521.

govern[ed] Pledger's claim in federal court, and that the district court erred by applying West Virginia's certificate requirement."  *Id.* at 521.

Defendants each contend that the *Pledger* decision is inapplicable to the instant action because it involved an FTCA claim, which established the federal court's federal question jurisdiction, and this Court has no subject matter jurisdiction over Plaintiff's state-law MPLA claims due to his failure to comply with its pre-suit notice requirements.  (ECF No. 44 at 4; ECF No. 46 at 4.)  This reading of the *Pledger* decision is completely misguided, though, and ignores the underlying *Shady Grove* analysis supporting the Fourth Circuit's conclusion that the Federal Rules of Civil Procedure supplanted the MPLA's pre-suit requirements in federal court.

The applicability of the *Shady Grove* analysis is not limited to cases involving federal question jurisdiction—which was the case in *Pledger*—rather, cases involving diversity jurisdiction and supplemental jurisdiction are also within *Shady Grove*'s purview.  *See Doe #5 v. Raleigh General Hospital, LLC*, Civil Action No.: 5:21-cv-00282, 2021 WL 4496241, at *5 (S.D. W. Va. Sept. 30, 2021) ("Simply put, the conflict between the pre-suit notice and the Federal Rules of Civil Procedure does not dematerialize in diversity actions.  *Pledger* applies just the same.").

In cases involving medical negligence under the MPLA in federal court, *Pledger*'s holding is categorical: "state-law certification requirements like West Virginia's [MPLA] are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court." *Pledger*, 5 F.4th at 514.  It was of no consequence that Pledger's claims were brought pursuant to the FTCA and invoked the court's federal question jurisdiction, as claims brought under the FTCA "incorporate[ ] state-law rules of 'substantive liability,' [but] not procedure."  *Id.* at 523 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)).  Similarly, here, it is of no consequence that Plaintiff's

claims were brought pursuant to the MPLA, thereby invoking this Court's supplemental jurisdiction. *Pledger*'s holding, and the *Shady Grove* analysis set forth therein, are applicable in this case because it is in federal court, notwithstanding this Court's jurisdiction over Plaintiff's claims.

Therefore, under *Pledger*'s guidance, dismissal of Plaintiff's state-law MPLA claims is not warranted on the basis that Plaintiff failed to comply with the MPLA's pre-suit notice requirements.  Rather, because the Fourth Circuit has instructed lower courts that the MPLA's pre-suit notice requirements are supplanted by the Federal Rules of Civil Procedure in federal court, Plaintiff's alleged failure to comply with the MPLA does not require dismissal of his claims in this federal court action.  Accordingly, the Court **DENIES** Dr. Ghorayeb, Dr. Lai, WVUBOG, and WVU Medical Corporation's motions to dismiss to the extent they argue that Plaintiff's failure to comply with the MPLA's pre-suit notice requirements mandates dismissal of his state-law medical negligence claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Plaintiff's objections to the PF&R, **REJECTS** the Magistrate Judge's PF&R, **DENIES** Dr. Ghorayeb and Dr. Lai's Joint Motion to Dismiss, (ECF No. 2), **DENIES** WVUBOG's Motion to Dismiss, (ECF No. 14), and **DENIES** WVU Medical Corporation's Motion to Dismiss, (ECF No. 19).  The Court **GRANTS** WVU Hospitals' Motion to Dismiss, (ECF No. 17), and **DISMISSES** Plaintiff's claims against it.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 28, 2022

THOMAS E. JOHNSTON, CHIEF JUDGE

27