UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TIMOTHY A. JOHNSON,

        Plaintiff,

v.                                CIVIL ACTION NO.   2:21-cv-00380

WEST VIRGINIA UNIVERSITY BOARD
OF GOVERNORS, et al.,

        Defendants.

**PROPOSED FINDINGS & RECOMMENDATION**

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Pending before the court is the Motion for Partial Summary Judgment filed by Plaintiff Timothy A. Johnson ("Plaintiff"). (ECF No. 113.) Therein, Plaintiff seeks summary judgment on his medical-malpractice claim against Defendant West Virginia University Medical Corporation d/b/a University Health Associates – West Virginia Eye Institute ("Defendant" or the "Eye Institute") on a theory of vicarious liability for the negligence of its agents and employees (hereinafter the "vicarious liability" claim). For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Plaintiff's motion be **DENIED**, as Plaintiff has not met his initial burden to show that he is entitled to judgment as a matter of law on the essential elements of his medical-malpractice claim, and genuine disputes of material fact remain.

I.   **BACKGROUND**

The undersigned previously detailed the facts of this case in Section I. of the Proposed Findings & Recommendations (collectively, the "PF&Rs") entered on February 17, 2023, and February 22, 2023, respectively, which are each incorporated herein by reference. (ECF Nos. 143 at 2-15; 144 at 2-9.) Accordingly, the undersigned limits further discussion of the facts herein to the additional evidence submitted by the parties in connection with the motion *sub judice*.

Plaintiff's motion seeks partial summary judgment against the Eye Institute on his medical-malpractice claim, asserting that "the undisputed evidence supports a partial summary judgment of vicarious liability against [the Eye Institute] for the serial medical malpractice committed in its facility" by Eye Institute physicians, who he asserts are the "agents and employees" of the Eye Institute. (ECF Nos. 113 at 1; 114 at 20.) In support of his motion, Plaintiff attached the July 13, 2022 expert-witness report of Jennifer Thorne, M.D., Ph.D.—a board-certified ophthalmologist—given in similar litigation against the Bureau of Prisons and its staff members that is pending in the U.S. District Court for the Northern District of West Virginia. (ECF Nos. 113-1; 114 at 20 (citing *Johnson v. United States*, 3:20-cv-157 (N.D. W. Va.)) [hereinafter the "Northern District litigation"]. Plaintiff cites to portions of Dr. Thorne's opinion in his motion memorandum regarding the medical characteristics of uveitis, potential causes, as well as potential complications and effects, including the statement that "[a]n ACE level is not used to determine disease activity in the eye as it is possible to visually see the inflammation in the eye;" likewise, Plaintiff again relies upon the medical screening certificate of merit of Dr. Camille Johnson ("Dr. Johnson") to set forth the alleged standard of care. (ECF Nos. 113-1; 114 at 3-6, 10-11, 16-17.)

Additionally, Plaintiff presented a medical chronology summarizing his treatment between June 14, 2016 and the present, but did not identify the source or author and did not provide the corresponding medical records cited therein. (ECF No. 114 at 6-10 (citing ECF No. 113-1).) Finally, Plaintiff pointed to the Affidavit of Defendant Ghassan Ghorayeb, M.D. ("Dr. Ghorayeb"), along with portions of Dr. Ghorayeb's responses to Plaintiff's Requests for Admissions. (ECF Nos. 101-13 at 1-3; 112; 114 at 11-14.)

The Eye Institute's Response memorandum contested Plaintiff's characterization of the facts as undisputed, and argued that issues of fact remain with respect to each essential element of Plaintiff's medical-malpractice claim. (ECF No. 116 at 5.) Further, the Eye Institute challenged the opinion of Dr. Johnson as inadmissible under Rule 702 of the Federal Rules of Evidence, and pointed out that Dr. Thorne's full opinion—which was selectively quoted by Plaintiff—actually *bolsters* the Eye Institute's defense. *Id*. at 4. Specifically, Dr. Thorne's opinion states in relevant part as follows:

> **Case Summary**: [Plaintiff] had a 20-year history [of] long-standing uveitis, glaucoma and poor vision. He was legally blind in his right eye and totally blind in the left eye when he entered prison. <u>His vision was unchanged during the time of his incarceration</u>. He received regular and consistent treatment and monitoring during the entirety of his incarceration. His vision was not adversely affected by his stay in prison[;] in fact, it was slightly better in the right eye when he [was released]. [. . .]
>
> **Opinions**: Plaintiff's claim of visual loss during incarceration is not supported by the medical records provided . . . . [I]t is my opinion to a reasonable degree of medical probability that [Plaintiff] did not lose vision during his incarceration . . . . <u>His medical and surgical treatment and follow up monitoring was appropriate and within the standard of care for the treatment of uveitis and uveitic glaucoma</u>.
>
> [Plaintiff] reported eye pain during some of his clinical visits which was attributed to several conditions including high eye pressure, dry eyes, active inflammation (uveitis), and post-operative pain. His treating ophthalmologists prescribed eye pressure lowering drops for elevated eye pressure, artificial tears and Restasis for his dry eyes, corticosteroid drops

and immunosuppressive medications for his uveitis, and ibuprofen for pain—all are reasonable measures to address his ocular conditions. [. . .]

Therefore, it is my opinion to a reasonable degree of medical probability that [Plaintiff's] elevated ACE in 2017, as relied upon by Plaintiff's purported expert witness, Camille Elise Johnson, M.D. is irrelevant to the care of his eyes. [. . .]

**Conclusion**: In summary and in consideration of the above, it is my opinion to a reasonable degree of medical probability that [Plaintiff] received appropriate care for his eyes that was consistent with the applicable standard of care while he was designated to FCI Morgantown from May 2016 through July 2019. [Plaintiff's] vision loss predated his incarceration at FCI Morgantown and his treatment and follow up during incarceration was within the standard of care for the treatment of uveitis and uveitic glaucoma. [Plaintiff's] treating physicians maintained his vision and his disease was inactive at his last clinical visit.

(ECF No. 113-1 at 2-6 (emphasis added).)

Additionally, the Eye Institute's Response challenged the timeliness of Plaintiff's motion, pointing out that discovery—including expert discovery—is in its initial stages and remains ongoing. (ECF No. 116 at 6.) The Eye Institute asserted that "Plaintiff's obstructive delays in the initial discovery process"—ostensibly, through Plaintiff's purported delay in producing a signed authorization for the release of his medical records—"supports the denial of the pending motion for partial summary judgment," because "[t]he records sought via the medical authorization are a crucial early step in all aspects of reviewing and analyzing the pending claim, including the necessity and types of experts that might be needed to defend the action[.]" *Id.* Explaining that additional discovery—including "conducting fact witness depositions, engaging in written discovery, engaging experts for opinions regarding liability, engaging experts for opinions regarding damages, and conducting expert depositions"—is "necessary to develop and defend against Plaintiff's claims," the Eye Institute concluded that "Plaintiff's motion is extremely premature given the status of litigation in this matter." *Id.* at 11-13. The Eye Institute

submitted a complete copy of Dr. Ghorayeb's Responses to Plaintiff's Requests for Admission along with its Response memorandum. (ECF Nos. 116; 116-1.)

Plaintiff's Reply brief first challenged the Eye Institute's argument that disputed facts remain; specifically, Plaintiff argued that the Defendants employed a "legally improper" strategy of "gamesmanship" in responding to certain allegations set forth in Plaintiff's Amended Complaint as well as in responding to certain discovery requests, that "the medical record(s) speak for themselves." (ECF No. 117 at 1-3.) Furthermore, Plaintiff challenged the Eye Institute's argument that additional discovery is needed, characterizing the Defendant's position as mere pretext for sidestepping "the merits of Plaintiff's material facts" and arguing that Defendants have had ample time to conduct discovery since the initial Complaint was originally filed in the Circuit Court of Kanawha County, West Virginia, on August 5, 2020. *Id.* at 4, 8-9. Plaintiff also pointed out that the Eye Institute did not submit an affidavit attesting to its need for additional discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. *See id.* Finally, Plaintiff concluded that the Eye Institute should be held liable for the alleged negligence of Dr. Ghorayeb, Lingo Lai, M.D. ("Dr. Lai"), and others who treated Plaintiff at the Eye Institute's facility in Morgantown, West Virginia. *Id.* at 7.

Along with his Reply, Plaintiff submitted a summary of Dr. Ghorayeb and Dr. Lai's answers to Plaintiff's Complaint (ECF No. 117-1); a copy of email correspondence between Plaintiff and defense counsel regarding Plaintiff's production of a signed authorization for Defendants' collection of medical records from Cleveland Clinic (ECF No. 117-2); Plaintiff's own unsworn Declaration dated January 19, 2023 (ECF No. 117-3); and a copy of a brief submitted by Plaintiff in the Northern District litigation in which Plaintiff argued that Dr. Thorne's opinion was inadmissible under Rule 702 of the Federal Rules of

5

Evidence (ECF No. 117-4). Finally, Plaintiff submitted a signed letter dated October 27, 2022 from Sunil Srivastava, MD, of the Cleveland Clinic, wherein Dr. Srivastava stated the following in relevant part:

> This is to confirm that [Plaintiff] was seen on 10/27/2022. [Plaintiff] suffers from severe vision loss in both eyes. . . . He was seen on 8/17/2022 on an emergent basis for new vision loss in his only seeing right eye. At that time he was noted to have severe inflammation and pain and a drop in his vision to hand motions (legally blind). He developed a retinal detachment in his right eye and has required a retinal detachment repair and corneal transplant to attempt to give him some vision in his right eye. His visual prognosis is guarded and at best he can see light perception currently. His visit on 8/17/2022 was needed as he noted new visual symptoms in his only seeing eye.

(ECF No. 117-5).

The undersigned has considered all of the evidence presented by the parties in making the instant recommendation. The motion has been fully briefed and is now ripe for adjudication. (ECF Nos. 113, 114, 116, 117.)

## I.   LEGAL STANDARD

To obtain summary judgment on a claim, a plaintiff bears the initial burden to show that there are no genuine issues of material fact as to each essential element on which he has the burden of proof at trial. Fed. R. Civ. P. 56(a). *See also Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *Hancock v. United States*, 1:20-cv-483, 2022 WL 19519723, at *3 (S.D. W. Va. Oct. 7, 2022). If the plaintiff meets this burden and establishes each essential element with admissible evidence, the defendant then bears the burden to "identify evidence that demonstrates the existence of a genuine issue of material fact." *Armstrong v. Furman*, 3:19-cv-141, 2020 WL 5545270, at *1 (W.D. Pa. Sept. 16, 2020) (citing *Celotex*, 477 U.S. at 324). In other words, "[o]nce the moving party has met its burden, the [defendant] may not rest on the allegations or denials in its pleading," but

instead "must come forward with specific facts showing that there is a genuine issue for trial." *Firewalker-Fields v. Hill*, 1:19-cv-626, 2021 WL 3216464, at *4 (E.D. Va. July 28, 2021) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

When ruling on a motion for summary judgment, the Court must view the evidence "in the light most favorable to the [nonmoving] party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Facts are material within the scope of Rule 56(a) "when they might affect the outcome of the case," and a "genuine issue" as to a material fact exists "when the evidence would allow a reasonable jury to return a verdict for the non-moving party." *News & Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). Summary judgment should not be granted if there are factual issues that reasonably may be resolved in favor of either party. *Liberty Lobby*, 477 U.S. at 250. "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

## II.  DISCUSSION

Plaintiff makes clear in his motion memoranda that he is seeking summary judgment on his medical-malpractice claim against the Eye Institute by operation of vicarious liability based upon the alleged negligence of his treating ophthalmologists, and not upon a theory of direct liability against the Eye Institute itself. A healthcare organization such as a hospital "will ordinarily not be held [vicariously] liable to the patient . . . where the physician involved was not an agent or employee of the hospital." Syl. Pt. 7, *Cross v. Trapp*, 294 S.E.2d 446 (W. Va. 1982). The requisite relationship is

determined by the hospital's "power of control" over a physician, such as its power to select, engage, and dismiss the physician, as well as its power to supervise and compensate the physician. *Burless v. W. Virginia Univ. Hosps., Inc.*, 601 S.E.2d 85, 91 (W. Va. 2004) (citation omitted). *See also Cunningham v. Herbert J. Thomas Mem'l Hosp. Ass'n*, 737 S.E.2d 270, 277 (W. Va. 2012).

In the absence of an agent or employee relationship, a patient may establish vicarious liability on a theory of apparent agency. *See Glover v. St. Mary's Hosp. of Huntington, Inc.*, 551 S.E.2d 31, 35 (W. Va. 2001) (remanding "for thorough evaluation of whether ostensible[1] agency can be established" under the facts of the case in the absence of direct negligence by the hospital). To hold a hospital vicariously liable for a physician's negligence under an apparent agency theory, a plaintiff must establish the following two elements: (1) an act or omission by the hospital created a circumstance that would cause a reasonable person to believe that the physician in question was its agent; and (2) the plaintiff relied on this apparent agency. *See Burless*, 601 S.E.2d at 98 (finding that summary judgment was improper when the question of plaintiffs' reliance upon the apparent-agency relationship between the hospital and the plaintiffs' treating physicians remained a genuine issue of material fact). In addition to these elements of apparent agency and reliance, the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *eq seq*. (the "MPLA"), further provides that "[a] health care provider may not be held vicariously liable for the acts of a nonemployee pursuant to a theory of ostensible agency unless the alleged agent does not maintain professional liability insurance covering the medical

---

[1] The terms "ostensible agency" and "apparent agency" are commonly used "interchangeably." *Burless*, 601 S.E.2d at 92 n.7.

injury which is the subject of the action in the aggregate amount of at least one million dollars." *Burless*, 601 S.E.2d at 96 n.13 (quoting W. Va. Code § 55-7B-9(g)).

Applying these standards to the evidence before the undersigned, it is clear that Plaintiff has not demonstrated as a matter of law that the Eye Institute is vicariously liable for the alleged negligence of any of Plaintiff's treating ophthalmologists. Plaintiff failed to demonstrate the requisite agent or employee relationship between the Eye Institute and Dr. Ghorayeb, Dr. Lai, or any of the other physicians practicing ophthalmology who treated Plaintiff at the Eye Institute's Morgantown, West Virginia facility. Plaintiff did not point to any evidence of the Eye Institute's control over its physicians, and indeed did not even address the circumstances under which his treating ophthalmologists are purported to practice in relation to the Eye Institute. Without more, there remains a genuine issue of material fact as to the existence of the requisite employment or agency relationship that could give rise to vicarious liability on the part of the Eye Institute. Plaintiff also failed to demonstrate vicarious liability against the Eye Institute on a theory of apparent agency. Plaintiff did not present any evidence that he relied on an apparent agency relationship between the Eye Institute and any of his treating ophthalmologists. Moreover, Plaintiff did not present any evidence that any of his treating ophthalmologists failed to maintain sufficient levels of professional liability insurance under § 55-7B-9(g).

Furthermore, even if Plaintiff had established an employee/agent relationship or apparent agency between the Eye Institute and one of his treating physicians, summary judgment is nonetheless improper because genuine issues of material fact remain with respect to the essential elements of Plaintiff's medical-malpractice claim under the MPLA. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 325. To make a *prima facie* showing, the MPLA requires Plaintiff to demonstrate that (1) his health care provider failed to "exercise that

9

degree of care, skill[,] and learning required or expected of a reasonable, prudent health care provider in the same profession or class to which the health care provider belongs acting in the same or similar circumstances" (hereinafter the "standard of care"); and (2) such failure was a proximate cause of Plaintiff's asserted injury. W. Va. Code § 55-7B-3.

"Under West Virginia law, it is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." *Buggs v. Lucas*, 1:18-cv-729, 2019 WL 2621838, at *9 (S.D. W. Va. May 15, 2019), *rep. & recommendation adopted*, 2019 WL 2619290 (June 26, 2019) (internal citations omitted). Pursuant to the MPLA, "[t]he applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court." W. Va. Code § 55-7B-7. A narrow exception to the expert requirement applies only in circumstances "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." *Farley v. Shook*, 629 S.E.2d 739 (W. Va. 2006).

This general rule is illustrated in the *Farley* matter, wherein the patient alleged that her physicians "negligently performed her cyst removal surgery, and that they mismanaged her care postoperatively, including failure to evaluate her while she was a patient in the emergency room." *Id.* at 744. The Supreme Court of Appeals of West Virginia held that the *Farley* patient's "medical issues and [the physicians'] alleged breaches relate to complex matters of diagnosis and treatment that are not within the understanding of lay jurors by resort to common knowledge and experience." *Id.* at 744-45. As a result, the *Farley* court concluded that "expert witness testimony was required

to establish any breach of the standard of care and any causal connection to [the patient's] . . . injuries." *Id.* at 745.

Here, as in *Farley*, expert testimony is necessary. Plaintiff's own expert, Dr. Johnson, explained that ocular sarcoidosis is difficult to diagnose even for trained physicians, "because the disease often produces few signs and symptoms in its early stages," and "[w]hen symptoms do occur, they may mimic those of other disorders." (ECF No. 106-1 at 9.) While Dr. Johnson opined that Dr. Ghorayeb breached the standard of care "for chronic sarcoidosis with ocular involvement by failing to prescribe Prednisone or any other inflammation controlling drug" during the relevant time period (*see* ECF No. 106-1 at 65), Dr. Johnson also acknowledged that "Prednisone has many adverse side-effects that requires consideration of a steroid spar[]ing drug" and that Plaintiff reported on July 10, 2018 and July 30, 2018, he felt Prednisone was making his vision worse. (ECF No. 106-1.) Furthermore, Dr. Ghorayeb attested that in his treatment of the Plaintiff, "there was no indication for an escalation in care to an oral steroid, especially given the patient's comorbid ocular diagnoses." (ECF No. 101-13.) Under the circumstances, Plaintiff's eye condition and Defendants' alleged breaches relate to complex matters of diagnosis and treatment that clearly are not within the common understanding of lay jurors, and expert testimony is required.

The only expert evidence Plaintiff presented in support of his medical-malpractice claim is Dr. Johnson's opinion in the medical screening certificate of merit that "Dr. Ghorayeb's failure to treat . . . [Plaintiff's] active sarcoidosis" with oral Prednisone breached the standard of care and "caused further organ (eye) damage necessitating eye surgery . . . and subsequent blindness." (ECF No. 1-1 at 31-32 (emphasis added).) Dr. Johnson does not provide any opinion as to the conduct of the other ophthalmologists

11

who treated Plaintiff at the Eye Institute; thus, Plaintiff's medical-malpractice claim hinges upon whether Dr. Ghorayeb breached the standard of care, and whether his breach was a proximate cause of Plaintiff's injuries.[2]

Altogether, in the current procedural posture of this case there remains a genuine dispute of material fact as to whether Dr. Ghorayeb's acts or omissions in treating Plaintiff were the cause of the damage Plaintiff sustained from his eye surgery. As the Court previously noted,[3] "[t]he problem is that . . . the record is unclear whether Plaintiff even had sarcoidosis in the first place." (ECF No. 156 at 9.) This issue is material because, as the Court explained, "[i]f Plaintiff never actually had sarcoidosis, Dr. Ghorayeb's alleged failure to meet the standard of care for that disease could not be the cause of Plaintiff's injury." *Id.* at 9-10. To grant summary judgment, there must be no scenario where a "reasonable jury could return a verdict for the non-moving party." *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (citation omitted). As the Court previously found, "[a] jury here could certainly find that Dr. Ghorayeb did not cause Plaintiff to require eye surgery." (ECF No. 156 at 10.) Thus, even if Dr. Ghorayeb's alleged breach of the standard of care could be attributed to the Eye Institute, Plaintiff is not entitled to summary judgment on his medical-malpractice claim against the Eye Institute based upon the evidence presently before the undersigned.

---

[2] As the Eye Institute pointed out in its response memorandum, "[n]owhere in Dr. Johnson's opinion does she find that [the Eye Institute] breached any standard of care . . . nor does she offer any opinion as to whether the alleged breach of care committed by Dr. Ghorayeb can be attributable" to the Eye Institute. (ECF No. 116 at 8.) Therefore, even if Plaintiff were pursuing a medical-malpractice claim against the Eye Institute directly, Plaintiff has failed to establish the essential elements of his claim, and summary judgment is improper.

[3] While the Court's previous discussion of the causation element pertained to Plaintiff's § 1983 claim against Dr. Ghorayeb, the same principles apply to the proximate-cause element of Plaintiff's medical-malpractice claim. *See Shaw v. Stroud*, 13 F.3d 791, 800 (4th Cir. 1994) (explaining that "the causal link in § 1983 cases is analogous to proximate cause").

## III. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 113) be **DENIED**.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Johnston.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff.

ENTER:   May 2, 2023

_____
Dwane L. Tinsley
United States Magistrate Judge