IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF WEST VIRGINIA

TIMOTHY A. JOHNSON,

Plaintiff,

v.

TIMOTHY R. LINKOUS, ESQ.,

JENNY L. HAYHURST, ESQ.,

DAVID E. SCHUMACHER, ESQ.,

CAROL ANN MARUNICH, ESQ.,

SARA GIFFORD,

GHASSAN RICHARD GHORAYEB, M.D.,    CIVIL ACTION NO.

LINGO Y. LAI, M.D.,

THOMAS R. FRIBERG, M.D.

MICHAEL E. WEINBLATT,, M.D.

EDWARD S. CHEN, M.D

JENNIFER E. THORNE, M.D., PH.D.

Defendants.

## COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

Plaintiff, Timothy A. Johnson, proceeding pro se, for his Complaint against the Defendants, states as follows:

### I. INTRODUCTION

1. This is a civil action brought by Plaintiff Timothy A. Johnson ("Plaintiff") against Timothy R. Linkous, Esq., Jenny L. Hayhurst, Esq., David E. Schumacher, Esq.,

    Carol Ann Marunich, Esq. , Sara Gifford, Ghassan Richard Ghorayeb, M.D.,, Lingo Y. Lai, M.D.,, and four defense medical expert witnesses, Thomas R. Friberg, M.D., Michael E. Weinblatt, M.D., Edward S. Chen, M.D. and Jennifer E. Thorne, M.D. for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

2. Defendants-in-Fact, acting individually and in concert, have engaged in a systematic and pervasive pattern of racketeering activity to corruptly influence, obstruct, and impede the due administration of justice in the underlying federal civil action, *Timothy A. Johnson v. West Virginia University Board of Governors, et al.*, Civil Action No. 3:21-cv-380, the "Underlying Litigation".

3. This pattern of racketeering activity has caused direct injury to Plaintiff's business and property, for which Plaintiff seeks treble damages, costs, and attorney's fees as provided by 18 U.S.C. § 1964(c).

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

5. Venue is proper in the Southern District of West Virginia pursuant to 18 U.S.C. § 1965(a), as the Defendants-in-Fact reside, are found, have agents, or transact their affairs within this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III. PARTIES

6. Plaintiff Timothy A. Johnson is an individual residing in Charleston, West Virginia, and is the plaintiff in the Underlying Litigation, proceeding *pro se*. Plaintiff is blind and alleges medical malpractice, 8th Amendment Deliberate Indifference to the Serious Medical Needs of a Prisoner, and prisoner discrimination in the Underlying Litigation.

7. Defendant Timothy R. Linkous, Esq., is an attorney licensed to practice law in West Virginia and other jurisdictions. He is a member of Linkous Law, PLLC, located in Morgantown, West Virginia. In the Underlying Litigation, Mr. Linkous represents West Virginia University Board of Governors, Dr. Lingo Lai, M.D., and Dr. Ghassan Ghorayeb, M.D.

8. Defendant Jenny L. Hayhurst, Esq., is an attorney licensed to practice law in West Virginia. She is a member of Linkous Law, PLLC, located in Morgantown, West Virginia. In the Underlying Litigation, Ms. Hayhurst represents West Virginia University Board of Governors, Dr. Lingo Lai, M.D., and Dr. Ghassan Ghorayeb, M.D.

9. Defendant David E. Schumacher, Esq., is an attorney licensed to practice law in West Virginia. He is a member of Bailey & Wyant, PLLC, located in Charleston, West Virginia. In the Underlying Litigation, Mr. Schumacher has consistently represented the West Virginia University Eye Institute.
10. Defendant Carol Ann Marunich, Esq., is an attorney licensed to practice law in West Virginia and other federal courts, including this District. She serves as Deputy General Counsel at West Virginia University, working closely with the University's senior leadership and overseeing litigation, including medical malpractice defense.
11. Defendant Sara Gifford is a Casualty Specialist III for American International Group, Inc. (AIG). Her job description includes managing litigation processes and defense counsel to ensure timely and cost-effective outcomes, maintaining strict adherence to regulatory compliance, and adept management of litigation processes and financial reserves.
12. Defendant Ghassan Richard Ghorayeb, M.D., is a physician and one of the individual defendants in the Underlying Litigation.
13. Defendant Lingo Y. Lai, M.D., is a physician and one of the individual defendants in the Underlying Litigation.
14. Defendant Thomas R. Friberg, M.D. is a Professor of Ophthalmology at the University of Pittsburg Medical School. Dr. Friberg is a board-certified Ophthalmologist with additional fellowship training in the sub-specialty of retinal diseases and surgery. Dr. Friberg was retained by the WVU Defendants in the Underlying Litigation as a medical expert witness to defend against Dr. Lai's and Dr. Ghorayeb's alleged breaches of the medical standard of care and their deliberate indifference to a prisoner's serious medical needs.
15. Michael E. Weinblatt, M.S., M.D. is a Professor of Medicine at Harvard University's Brigham and Women's Hospital in Boston, Massachusetts. Dr. Weinblatt is a board-certified Rheumatotologist and was retained by the WVU Defendants in the Underlying Litigation as a medical expert witness to defend against Dr. Lai's and Dr. Ghorayeb's alleged breaches of the medical standard of care and their deliberate indifference to a prisoner's serious medical needs.
16. Edward S. Chen, M.D. is an Associate Professor of Clinical Medicine at Johns Hopkins University. He is board-certified in Pulmonary Medicine and Critical Care Medicine. Dr. Chen was retained by the WVU Defendants in the Underlying Litigation as a medical expert witness to defend against Dr. Lai's and Dr. Ghorayeb's alleged breaches of the medical standard of care and their deliberate indifference to a prisoner's serious medical needs.
17. Jennifer E. Thorne, M.D., Ph.D. is the Cross Family Professor of Ophthalmology and chief of the Division of Ocular Immunology & Uveitis at the Wilmer Eye

Institute, Johns Hopkins School of Medicine. Dr. Thorne holds a joint appointment as professor of epidemiology at the Johns Hopkins Bloomberg School of Public Health. Dr. Thorne describes herself, "I am an internationally recognized, board-certified ophthalmologist and expert in the evaluation and management of patients with uveitis and other related immune-mediated ocular disorders."

18. Dr. Thorne was retained by the WVU Defendants in the Underlying Litigation as a medical expert witness to defend against Dr. Lai's and Dr. Ghorayeb's alleged breaches of the medical standard of care and their deliberate indifference to a prisoner's serious medical needs.

### IV. THE ENTERPRISE (18 U.S.C. § 1961(4))

19. At all times relevant hereto, Defendants-in-Fact constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4). This enterprise is an "association-in-fact" consisting of Defendants-in-Fact, Linkous Law, PLLC, Bailey & Wyant, PLLC, West Virginia University, West Virginia University Medical Corporation, West Virginia University Eye Institute, and American International Group, Inc. (AIG).

20. The enterprise is an ongoing organization with a common purpose, relationships among its associates, and longevity sufficient to pursue its purpose.

21. The common purpose of this enterprise is to defend the Underlying Litigation and other related claims against West Virginia University and its affiliated entities and employees, and to manage associated financial exposure, allegedly through a pattern of racketeering activity designed to corruptly influence, obstruct, and impede the due administration of justice, and to coerce and burden the Plaintiff and his witnesses.

22. The enterprise is engaged in, and its activities affect, interstate commerce, as evidenced by, but not limited to, depositions conducted across state lines (e.g., Arizona, Michigan), the use of interstate wire communications (e.g., Zoom, email, PACER), and the interstate operations of West Virginia University and its medical components, and AIG.

### V. PATTERN OF RACKETEERING ACTIVITY (18 U.S.C. § 1961(5))

23. Defendants-in-Fact have engaged in a "pattern of racketeering activity" consisting of multiple predicate acts, all related in purpose, method, victims, and participants, and demonstrating continuity, as follows:

A. **Predicate Act 1: Misrepresentation in Open Court - Sarcoidosis Diagnosis (18 U.S.C. § 1503)**

23. On or about February 10, 2023, at a Motions hearing in the Underlying Litigation, Defendant Timothy R. Linkous, in open court, falsely averred to the District Court Judge, stating: "The fundamental basis of the claims failure to treat sarcoidosis is question at this point, as we don't have any evidence that he in fact

has sarcoidosis. Its all history of "I have sarcoidosis.""

24. This statement was a material misrepresentation of fact, as it is undisputed that Defendant Dr. Lingo Lai diagnosed Plaintiff with sarcoidosis on June 14, 2017; July 25, 2017; and December 13, 2017. It is also undisputed that Defendant Dr. Ghassan Ghorayeb diagnosed Plaintiff with sarcoidosis 16 times. Furthermore, WVU Pulmonologists and Rheumatologists contemporaneously diagnosed Plaintiff with ocular sarcoidosis. A second opinion by Cleveland Clinic Rheumatologist Jennifer Peugh, M.D., on May 16, 2023 (ECF-238-1, p.41), also confirmed the sarcoidosis diagnosis.

25. Defendant Linkous knew or was recklessly indifferent to the falsity of this statement, which directly influenced the District Court Judge's March 24, 2023, Order (ECF-156) regarding Plaintiff's Motion for Summary Judgment with the District Court Judge finding, "The problem is that—as thePF&R observes—the record is unclear whether Plaintiff even had sarcoidosis in the first place. (ECF No. 143 at 22-24.)"

26. This act constitutes obstruction of justice in violation of 18 U.S.C. § 1503, by corruptly endeavoring to influence or impede the due administration of justice.

**B. Predicate Act 2: Witness Intimidation - Cpl. Derrick McDaniel (18 U.S.C. § 1512)**

27. On or about September 13, 2023, Defendant Timothy R. Linkous, acting as counsel for the defense, threatened City of Charleston Police Corporal Derrick McDaniel, a federal witness in the Underlying Litigation.

28. Mr. Linkous falsely alleged that Cpl. McDaniel and a Notary Public at the Kanawha Tax Assessor's Office forged a notarized statement, and stated on the record that he was going to depose the Notary.

29. Defendant Linkous later withdrew the plan to depose the Notary, demonstrating that the threat was a bluff intended to intimidate Cpl. McDaniel with implied criminal behavior.

30. This act constitutes witness tampering in violation of 18 U.S.C. § 1512, by knowingly using intimidation with the intent to influence or prevent the testimony of a person in an official proceeding.

**C. Predicate Act 3: Abuse of Process / Witness Tampering - Dr. Gomez Motion (18 U.S.C. § 1503 / § 1512)**

31. On or about August 30, 2023, Defendant Timothy R. Linkous filed a Motion to Strike Plaintiff's Expert Disclosure and Report of David B. Gomez, O.D. (ECF No. 203).

32. Defendant Linkous explicitly admitted that "it was only the threat of a motion that apparently caused Dr. Gomez to reconsider his position and offer a

deposition date."

33. On January 31, 2024, the Magistrate Judge DENIED this motion (ECF-205, ECF-213, ECF-215), finding Defendants failed their duty to confer under Local Rule 37.1(b) and that the requested sanction was unwarranted, thus confirming the improper procedural conduct and coercive purpose.

34. This act constitutes obstruction of justice in violation of 18 U.S.C. § 1503, by corruptly endeavoring to impede the due administration of justice, and/or witness tampering in violation of 18 U.S.C. § 1512, by knowingly using a threat with intent to influence testimony.

**D. Predicate Act 4: Malicious Public Disclosure of Private Facts & Witness Intimidation (18 U.S.C. § 1513 / § 1512)**

35. On or about September 13, 2023, Defendant Jenny L. Hayhurst filed a *Motion for Sanctions* (ECF-210) averring to the Court that medical records from BeWell Medical Center in Michigan were "Plaintiff's prescriptions medical records."

36. These records contained highly sensitive information (HIV diagnosis, dialysis) for a 56-year-old male and his wife in Michigan, and were not Plaintiff's records. Plaintiff is blind and lives in West Virginia, while his brother (the actual patient) is not blind and receives dialysis in Michigan. Defendants Linkous and Hayhurst knew or should have known these records were not Plaintiff's.

37. Despite an initial denial to seal, these records were ultimately publicly disclosed via PACER (albeit redacted versions, ECF Nos. 214-1 through 214-6).

38. This "extraordinary litigation filing" was intended to "intimidate my brother and sister-in-law, Rachel" (a named federal witness) through "malicious public disclosure of private facts, federal witness tampering and intimidation, abuse of process, and unethical conduct."

39. This act constitutes witness retaliation in violation of 18 U.S.C. § 1513 (by taking action harmful to a person for being a witness) and/or witness tampering in violation of 18 U.S.C. § 1512 (by knowingly using intimidation with intent to influence testimony).

**E. Predicate Act 5: Direct Witness Tampering - Dr. Lefkowitz (18 U.S.C. § 1512)**

40. On or about September 29, 2023, during Plaintiff's medical expert witness, Todd A. Lefkowitz, M.D.'s deposition in Arizona, Defendant Timothy R. Linkous directly threatened Dr. Lefkowitz's professional standing.

41. Mr. Linkous stated: "I plan on submitting your report, if you don't withdraw it, and the deposition here today, to say like the Arizona Medical Board... and I plan on submitting it to various professional organizations... depending on what you say about this report."

42. Dr. Lefkowitz's immediate reaction was "This has never occurred in over 60

depositions,." and subsequent qualification of his memory, from recent COVID, due to "fear" of detriment to his Arizona medical license demonstrates the coercive impact.

43. This act constitutes witness tampering in violation of 18 U.S.C. § 1512, by knowingly using intimidation, threats, or corrupt persuasion with the intent to influence or prevent testimony or induce alteration of documents/testimony.

**F. Predicate Act 6: Direct Witness Tampering - Dr. Camille Johnson (18 U.S.C. § 1512)**

44. On or about October 10, 2023, during Dr. Camille Johnson's Zoom deposition (from Detroit, Michigan), Defendant Timothy R. Linkous extensively questioned Dr. Johnson about her medical board's disciplinary policies, stating that "deposition transcripts get sent to these organizations for review to ensure that the testimony is honest, ethical, scientifically based factual, and consensus-driven Okay?"

45. When Plaintiff immediately objected (ECF-251-33), stating this was intimidation to alter testimony, Mr. Linkous responded, "I would think it would only be intimidating if it weren't truthful, honest, scientifically driven, factually based, and consensus-driven." This exchange captures Defendant Linkous's alleged intent to coerce "consensus-driven" testimony and his dismissive justification for intimidation. Mr. Linkous's general statement in this deposition that he reviewed licensure and professional affiliation punishments with "all the witnesses that he deposed" indicates a systemic strategy of intimidation.

46. This act constitutes witness tampering in violation of 18 U.S.C. § 1512, by knowingly using intimidation or corrupt persuasion with the intent to influence testimony.

**G. Predicate Act 7: Misrepresentation & Abuse of Process - Lisa Westfall Motion to Strike (18 U.S.C. § 1503 / § 1343)**

47. On or about October 2, 2023, Defendant Jenny L. Hayhurst, Esq. filed a *Motion to Strike Lisa Westfall's report* (ECF-221), alleging Rule 26 deficiencies and claiming "no basis for any of Ms. Westfall's opinions."

48. In her sworn affidavit (May 10, 2024, Exhibit 1 to ECF-294), Ms. Westfall systematically refuted Linkous Law's claims, including stating that the claim about her verbal discussion with Dr. Lefkowitz regarding expenses was "100% false." Ms. Westfall also showed that her 703(c) methodology has been approved and endorsed by the Federal District Court for the Southern District of West Virginia in *Edwards v. McElliott Trucking*, Case No. 3:16-cv-1879 at Doc. 126, directly contradicting the basis of the defense's motion. It also appears that the attorneys wrote these expert opinions, promoting a defense of false narratives, and the experts just signed them, which is a severe ethical breach.

49. Defendant Linkous later withdrew the request for a hearing on this motion

(ECF-293), opting for a decision on briefs, interpreted as an attempt to avoid direct judicial scrutiny.

50. This act constitutes obstruction of justice in violation of 18 U.S.C. § 1503, by corruptly impeding the due administration of justice through false factual representations in a court filing, and/or wire fraud in violation of 18 U.S.C. § 1343, as part of a scheme to defraud the court and Plaintiff using interstate wire communications (e.g., electronic filing, emails) to generate fees for improper litigation.

**H. Predicate Act 8: Bad Faith Negotiation / Obstruction (18 U.S.C. § 1503 / § 1343)**

51. On or about October 2, 2023, the Magistrate Judge ordered a "meet and confer" mediation conference. Defendants Linkous, Hayhurst, Ghorayeb, Lai, Schumacher, Marunich, and Gifford attended via Zoom.

52. Defendant Linkous spoke for the defense for only 4 minutes, stating they were "not going to settle" and that Plaintiff "must drop the malpractice claims before we can even consider to negotiate." This demand was confirmed in an email.

53. This short, non-engaging session, coupled with the improper precondition, constitutes egregious bad faith participation in a court-ordered settlement conference, violating Federal Rule of Civil Procedure 16(f).

"Despite her explicit job requirements as an AIG Casualty Specialist III to 'effectively manage litigation process and defense counsel to ensure timely and cost-effective outcomes' and 'comply with all statutory and regulatory requirements,' Defendant Sara Gifford **actively enabled and condoned** Mr. Linkous and the other Defendants' **blatant bad-faith negotiation** at this Court-ordered Rule 16 'meet and confer' mediation.

54. This act constitutes obstruction of justice in violation of 18 U.S.C. § 1503, by corruptly impeding the due administration of justice (the settlement process), and/or wire fraud in violation of 18 U.S.C. § 1343, as part of a scheme to defraud Plaintiff of his legitimate claims for the financial benefit of Defendants' insurance using interstate wire communications (Zoom, email).

**I. Predicate Act 9: Extra-Judicial Harassment by General Counsel (18 U.S.C. § 1512)**

55. On or about September and October 2024, Defendant Sunita Kellermeyer, as Assistant Vice President & Senior Clinical Operations Counsel, and the client representative for West Virginia University Medical Corporation d/b/a University Health Associates – West Virginia Eye Institute, allegedly engaged in "creeping" on Plaintiff's LinkedIn account, with serial visits (September 5, 17, 21, 27, October 4, 12, 13, 2024), well past discovery deadlines.

56. Plaintiff raised concerns about "nefarious and extra-judicial reasons" for these contacts by and through January 14, 2025, and January 30, 2025, emails to

Mr. Schumacher. Defendant Schumacher responded on January 31, 2025 via email that Ms. Gifford "has advised that she has no recollection of reviewing your LinkedIn account," a response that strains credulity.

57. This alleged conduct by a high-ranking West Virginia University Eye Institute professional involved in managing litigation, potentially violating the spirit of the Protective Order (ECF-72) (which prohibited direct communication with Defendants), constitutes witness tampering or harassment in violation of 18 U.S.C. § 1512(d), by intentionally harassing a person and thereby hindering, delaying, preventing, or dissuading them from participating in an official proceeding.

**J. Predicate Act 10: Perjury by Dr. Lai (18 U.S.C. § 1621)**

58. In litigation, Defendant Dr. Lingo Y. Lai, M.D. denied her own diagnoses of sarcoidosis made on three occasions, stating that her diagnoses were made solely on Mr. Johnson's self-reporting of sarcoidosis.

59. This statement was made under oath by response to interrogatory.

60. This statement was factually false, as it is undisputed that Dr. Lai formally diagnosed Plaintiff with sarcoidosis on June 14, 2017; July 25, 2017; and December 13, 2017. Furthermore, sarcoidosis was listed as Plaintiff's assessments and diagnosis in medical records, and Dr. Lai's diagnosis was billed under the HCC code for sarcoidosis, requiring a physician's formal, documented, and supported diagnosis.

61. Defendant Dr. Lai knew this statement was false at the time it was made, as it contradicted her own documented medical records and billing practices.

62. This false statement was material to the Underlying Litigation, as the diagnosis of sarcoidosis is central to Plaintiff's claims of medical malpractice and deliberate indifference.

63. This act constitutes perjury in violation of 18 U.S.C. § 1621.

**K. Predicate Act 11: Perjury/Obstruction by Dr. Ghorayeb (18 U.S.C. § 1621 / § 1503)**

64. In litigation, Defendant Dr. Ghassan Richard Ghorayeb denied his own undisputed 16 diagnoses of sarcoidosis,, stating that his diagnoses were made solely on Mr. Johnson's self-reporting of sarcoidosis.

65. This statement was made under oath during his deposition.

66. This statement was factually false, as it is undisputed that Dr. Ghorayeb formally diagnosed Plaintiff with sarcoidosis on 16 occasions. Furthermore, sarcoidosis was listed as Plaintiff's assessments and diagnosis in medical records, and Dr. Ghorayeb's diagnosis was billed under the HCC code for sarcoidosis, requiring a physician's formal, documented, and supported diagnosis.

67. Defendant Dr. Ghorayeb knew this statement was false at the time it was made, as it contradicted his own documented medical records and billing

practices.

68. This false statement was material to the Underlying Litigation, as the diagnosis of sarcoidosis is central to Plaintiff's claims of medical malpractice and deliberate indifference.

69. This act constitutes perjury in violation of 18 U.S.C. § 1621, and/or obstruction of justice in violation of 18 U.S.C. § 1503, by corruptly endeavoring to impede the due administration of justice through false testimony.

**L. Predicate Act 12: Perjury/Obstruction by Defense Medical Expert Witnesses (18 U.S.C. § 1621 / § 1503)**

70. The defense retained four medical expert witnesses Thomas R. Friberg, M.D., Michael E. Weinblatt, M.D., Edward S. Chen, M.D., Jennifer E. Thorne, M.D., Ph.D. to provide opinions in the Underlying Litigation.

71. These experts failed to discuss that Defendant Dr. Lai had diagnosed sarcoid uveitis on three examinations and that Defendant Dr. Ghorayeb had diagnosed sarcoidosis 16 times, instead musing on what doctor in the past had initially diagnosed Plaintiff with sarcoidosis, indicating an attempt to omit or obscure material facts.

72. Dr. Friberg, Dr. Weinblatt, and Dr. Chen failed to cite to any medical literature to support their opinions, rendering "ipse dixit" testimony, which does not meet Rule 702 standards and is indicative of a lack of genuine expert basis.

73. Defendant Edward S. Chen, M.D. testified that there are no guidelines for "sarcoidosis" including ocular sarcoidosis, despite having co-authored and published ocular sarcoidosis treatment guidelines. This constitutes a direct misrepresentation under oath.

74. None of the four defense experts opined on obvious breaks and gaps in the defendants' treatment.

75. It appears that all four experts were following a predetermined "narrative developed in litigation," and that attorneys wrote their opinions, which the experts then signed and swore to by affidavit. This practice, if the opinions do not truly reflect the experts' independent judgment or contain omissions/misrepresentations, is a severe ethical breach and potential fraud on the court.

76. The intentional omission of material facts, provision of misrepresentations under oath, and/or swearing to opinions not genuinely their own constitute perjury in violation of 18 U.S.C. § 1621, and/or obstruction of justice in violation of 18 U.S.C. § 1503, by corruptly endeavoring to impede the due administration of justice through false testimony.

## VI. CONDUCT OF THE ENTERPRISE'S AFFAIRS (18 U.S.C. § 1962(c))

77. Each of the Defendants-in-Fact was "employed by or associated with" the

enterprise and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through the pattern of racketeering activity.

78. **Defendant Timothy R. Linkous** directly committed multiple predicate acts, including misrepresentation in open court, witness intimidation (Cpl. McDaniel, Dr. Lefkowitz, Dr. Johnson), abuse of process (Dr. Gomez motion), bad faith negotiation, and was involved in the alleged creation of misleading expert opinions. His general statement about reviewing licensure consequences with "all" deposed witnesses indicates a systemic approach.
79. **Defendant Jenny L. Hayhurst** directly committed predicate acts, including malicious public disclosure of private facts and witness intimidation (Rachel's records), and was involved in the Lisa Westfall motion and the alleged creation of misleading expert opinions. She was also complicit in and ratified Mr. Linkous's witness tampering by her presence and silence during depositions.
80. **Defendant David E. Schumacher** was complicit in and ratified Mr. Linkous's witness tampering by his presence and silence during depositions. He was also involved in the bad faith negotiation and responded to the LinkedIn harassment allegations.
81. **Defendant Carol Ann Marunich** (Deputy General Counsel, WVU) directly participates in and conducts the affairs of the enterprise by:
    - Being aware of and allegedly sanctioning the presentation of Dr. Lai's and Dr. Ghorayeb's false defense regarding sarcoidosis.
    - Approving the litigation fees of Linkous Law, PLLC, and Bailey & Wyant, PLLC, thereby allegedly funding and allowing "churning" and payment for improper motions (e.g., Dr. Gomez "threat" motion) and other alleged predicate acts.
    - Attending and allowing the bad faith negotiation in the court-ordered mediation.
    - Her high-level position and explicit job duties involve overseeing litigation and ensuring ethical conduct, making her alleged awareness and inaction a direct participation in the enterprise's illicit affairs.
82. **Defendant Sara Gifford** (AIG Casualty Specialist III) directly participates in and conducts the affairs of the enterprise by:
    - Allegedly engaging in extra-judicial harassment via LinkedIn.
    - Managing litigation processes and defense counsel to ensure "cost-effective outcomes," including approving defense counsel's work that constitutes alleged predicate acts.
    - Being aware of the "drop malpractice claims" demand, which directly benefited AIG's financial reserves, and her silence during this bad faith negotiation.
    - Her role demands "strict adherence to regulatory compliance," making her

    alleged failure to ensure compliance by the counsel she manages, and her own alleged misconduct, a direct participation in the enterprise's illicit affairs.
83. **Defendant Ghassan Richard Ghorayeb, M.D.**, directly participates in and conducts the affairs of the enterprise by:
    - Allegedly committing perjury (18 U.S.C. § 1621) or obstruction (18 U.S.C. § 1503) by denying his own undisputed diagnoses of sarcoidosis (16 times) in litigation and falsely attributing them solely to Plaintiff's self-reporting.
    - Being a direct beneficiary of the alleged pattern of racketeering activity designed to obstruct justice and avoid liability for the underlying claims.
84. **Defendant Lingo Y. Lai, M.D.**, directly participates in and conducts the affairs of the enterprise by:
    - Allegedly committing perjury (18 U.S.C. § 1621) by denying her own undisputed diagnoses of sarcoidosis made on three occasions in litigation and falsely attributing them solely to Plaintiff's self-reporting.
    - Being a direct beneficiary of the alleged pattern of racketeering activity designed to obstruct justice and avoid liability for the underlying claims.
85. **Defendants Thomas R. Friberg, M.D, Michael E. Weinblatt, M.D., Edward S. Chen and Jennifer E. Thorne, M.D., Ph.D.** directly participate in and conduct the affairs of the enterprise by:
    - Allegedly providing false or misleading testimony under oath (perjury, 18 U.S.C. § 1621) by denying or omitting key undisputed diagnoses, failing to cite supporting literature (ipse dixit), and misrepresenting medical guidelines.
    - Allegedly signing expert notes and affidavits that were primarily written by attorneys and did not genuinely reflect their independent, objective opinions, in furtherance of a scheme to mislead the court and obstruct justice.
    - Being direct beneficiaries of the alleged pattern of racketeering activity (e.g., payment for testimony used to corruptly impede the administration of justice).

## VII. INJURY TO PLAINTIFF'S BUSINESS OR PROPERTY (18 U.S.C. § 1964(c))

86. As a direct and proximate result of Defendants-in-Fact's pattern of racketeering activity, Plaintiff has suffered injury to his business and property, including but not limited to:
    - **Increased Litigation Costs and Expenses:** Plaintiff has been forced to expend significant time, effort, and resources (including potential future attorney's fees if counsel is retained) to respond to Defendants' unwarranted motions (e.g., Dr. Gomez, Lisa Westfall), defend against malicious sanctions requests (Michigan records), and counter factual misrepresentations (sarcoidosis diagnosis, Lisa Westfall affidavit, expert witness notes, expert testimony).

- - **Diversion of Resources:** Plaintiff, as a blind *pro se* litigant, has been forced to divert substantial personal time and energy away from preparing his underlying claims to combat Defendants' alleged abusive litigation tactics.
  - **Diminished Value of Claims:** The alleged witness tampering, misrepresentations to the court, and other obstructive tactics have directly and proximately injured the value and fair adjudication of Plaintiff's underlying medical malpractice, 8th Amendment deliberate indifference, and prisoner discrimination claims.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Timothy A. Johnson demands judgment against Defendants Timothy R. Linkous, Jenny L. Hayhurst, David E. Schumacher, Carol Ann Marunich, Sara Gifford, Ghassan Richard Ghorayeb, M.D., Lingo Y. Lai, M.D., Thomas R. Friberg, M.D, Michael E. Weinblatt, M.D., Edward S. Chen and Jennifer E. Thorne, M.D., Ph.D., jointly and severally, as follows:

A. That Plaintiff recover threefold the damages he has sustained to his business and property by reason of Defendants' violations of 18 U.S.C. § 1962, as proven at trial;
B. That Plaintiff recover the costs of this action, including reasonable attorney's fees, as provided by 18 U.S.C. § 1964(c);
C. For such other and further relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

**Timothy A. Johnson (Pro Se)**

3500 Staunton Ave. S.E.
Apartment 12
Charleston, WV  25304
(304)767-2395